**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No.  22-CR-303-3 (ABJ)** |
| | : | |
| **BROADUS JAMAL DANIELS,** | : | |
| Also known as "Wardy," | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' MOTION TO EXCLUDE DEFENDANT'S EXPERT**
**WITNESSES OR, IN THE ALTERNATIVE, FOR A DAUBERT HEARING**

The United States of America, by and through its attorneys, the United States Attorney for the District of Columbia and undersigned counsel, respectfully moves this Court to exclude the testimony of proposed defense experts Carl Leisinger, Arthur Young, and Alfred Demirjian (hereinafter, the "Proffered Experts"). As discussed in full below, DANIELS' Expert Notice, filed pursuant to Federal Rule of Criminal Procedure 16(b)(1)(C)(ii), is insufficient because it fails to provide adequate notice of the Proffered Experts' opinions, fails to state the bases and reasons for those opinions, and – most importantly – fails to state their qualifications to testify to those opinions. As best the United States can tell from the limited disclosure, the proffered testimony has only dubious relevance to the case and would not be helpful to the jury.  As such, the testimony should be excluded.

**PROCEDURAL BACKGROUND**

The twenty-one count Third Superseding Indictment charges Broadus Jamal DANIELS with ten separate offenses: Conspiracy to Distribute and Possess with intent to Distribute Marijuana and Oxycodone; Conspiracy to Use, Carry, and Possess Machineguns During, in Relation to, and in Furtherance of Drug Trafficking Crimes; Illegal Possession of a Machinegun (two counts); Using, Carrying, and Possessing a Machinegun During and in Relation to, and in

1

Furtherance of, a Drug Trafficking Offense (two counts); Possession with Intent to Distribute Marijuana; Possession with Intent to Distribute Cocaine Base; Unlawful Possession of Firearms and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year; and Using, Carrying, and Possessing a Firearm During and In Relation to, and in Furtherance of, a Drug Trafficking Offense. (Docket Entry 138). Trial in this case is scheduled to begin on August 1, 2024.

The United States' trial evidence will include hundreds of digital exhibits extracted from DANIELS' Instagram account and cellular telephones, as well as six firearms discovered in DANIELS' residence on March 31, 2023. Of the six firearms discovered in the residence, DANIELS' DNA was found on five of the six firearms discovered in the residence, and one of the firearms with DANIELS' DNA was found on was determined to be a "machinegun" as that term is defined by statute. On June 17, 2024, the United States gave notice of its intent to call multiple experts, two of which are: (1) Jessica M. Van Dyke, an expert in the field of forensic serology and forensic DNA analysis; and (2) Doug Halepaska as an expert in the field of firearms analysis. (Docket Entry 176). The United States' expert notices contained formal requests for any defense experts pursuant to Rule 16 (b)(1)(C) of the Federal Rules of Criminal Procedure. (Docket Entry 176), at 5-6.

The Court's scheduling order provided, among other things, that the parties must give notice of any expert witnesses by July 8, 2024. (Docket Entry 94), at 3. On July 7, 2024, DANIELS filed a notice of expert testimony with the Court and provided that information, including the Proffered Experts' CVs, to the United States under separate cover. (Docket Entry 201) at 6.[1]

---

[1] While the United States is aware that, per the Court's Scheduling Order, Motions in Limine were due on June 17, 2024, the United States was not provided with Notice of the Def. Experts until July 7, 2024. The instant motion is being filed as soon as possible.

DANIELS offers three proposed expert witnesses: Messrs. Carl Leisinger, Arthur Young, and Alfred Demirjian.[2] Id. For ease of the Court's reference, the below is a verbatim recitation of DANIELS' expert notice pursuant to Rule 16(b)(1)(C)(ii) of the Federal Rules of Criminal Procedure, as contained in the Joint Pretrial Statement:

- Carl Leisinger. Mr. Leisinger is the former Examiner/Trainer/Supervisor of the New Jersey State Police. His Curriculum Vitae is attached hereto. Mr. Leisinger has been retained to test-fire and evaluate the purported machine gun recovered in the March, 2023 search of premises located at 6th Street, SE, Washington, D.C. Mr. Leisinger is awaiting receipt of the weapon. He will provide his report upon conclusion of this evaluation.[3]

- Arthur Young. Mr. Young reviewed numerous body worn camera videotapes of the search of the premises identified as 3364 6th Street, S.E. Washington, D.C. The body worn camera depicts several police officers roaming through the apartment touching furniture, door handles and numerous other items in the apartment. The officers are also depicted touching weapons in a storage area that are charged to Mr. Daniels. Mr. Young will explain to the jury the scientific concept known as Touch DNA. He will explain people shed thousands of skin cells containing DNA per day. However, skin cells move. Thus, Mr. Daniels' DNA may have been all over the apartment and the officers touching objects in the apartment could have picked up Mr. Daniels' DNA from an item in the apartment and inadvertently transferred it on to one of the weapons found in the apartment. Mr. Daniels may not have deposited his DNA directly onto the weapons. Mr. Young is being offered as a teaching expert. He will not opine to a reasonable degree of scientific certainty that Mr. Daniels did or did not transfer his DNA directly on to the weapons, Rather, Mr. Young will explain the process of Touch DNA and how a person's DNA can end up on an weapon without having directly deposited the DNA on to the weapon.

- Alfred [Demirjian].[4] Mr. [Demirjian] is an expert in the fields of information security and data forensics. His Curriculum Vitae is being hand-delivered to government counsel on July 8, 2024. He will explain to the jury how Instagram works and how Instagram accounts can be created in the false names of individuals who are not the actual account holders. Mr. [Demirjian] is being offered as a teaching witness. He will not offer a specific opinion as to whether any of the Instagram accounts alleged to be in the name of Mr. Daniels were or were not falsely attributed

---

[2] The Proffered Experts' CVs are submitted to the Court as Exhibits 1-3. Personally Identifiable Information has been redacted.

[3] The United States is awaiting receipt of Mr. Leisinger's report and, consequently, has been unable to determine whether it must engage a rebuttal expert.

[4] The United States was provided with an incorrect spelling of Mr. Demirjian's name. The bracketed portions contain the correct spelling.

to Mr. Daniels. Rather, his opinions will be simply that false accounts can be created.

As noted in the Joint Pretrial Statement, the United States objects to each of these Proffered Experts. This Motion follows.

## **LEGAL STANDARD**

For a witness to offer expert testimony, a threshold determination must first be made to assess if the witness's "knowledge, skill, experience, training, or education" qualifies them as an expert. FED. R. EVID. 702. The admissibility of expert testimony is governed by the Supreme Court's decision in Daubert and its progeny, as well as Federal Rule of Evidence 702. See, e.g., United States v. Day, 524 F.3d 1361, 1367–68 (D.C. Cir. 2008). The proponent of the expert bears the burden of proving that the proffered expert witness is "qualified, that his proposed testimony would be useful to the finder of fact, and that the testimony is reliable." Barnes v. District of Columbia, 924 F. Supp. 2d 74, 94 (D.D.C. 2013) (quoting Sykes v. Napolitano, 634 F. Supp. 2d 1, 5 (D.D.C. 2012)).

In Daubert v. Merrell Dow Pharmaceuticals Inc., the Supreme Court announced a new standard that "involves a two-prong analysis that centers on evidentiary reliability and relevancy: the district court must determine first whether the expert's testimony is based on 'scientific knowledge;' and second, whether the testimony 'will assist the trier of fact to understand or determine a fact in issue.'" 509 U.S. 579, 590 (1993); Ambrosini v. Labarraque, 101 F.3d 129, 133 (D.C. Cir. 1996) (citing Daubert, 509 U.S. at 592) (emphasis added). The Court, later clarifying the Daubert decision, held that the Daubert inquiry is used to assess the credibility for all specialized knowledge, not just scientific or technical knowledge. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 149 (1999). Federal Rule of Evidence 702, effectively codifying the Daubert and Kumho Tire decisions, states, in pertinent part, that a witness may qualify and testify

as an expert if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of act to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is a product of reliable principles and methods; <u>and</u> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702 (emphasis added).

To begin its analysis, a trial court must focus its inquiry on the methodology or reasoning employed by the expert. <u>Ambrosini</u>, 101 F.3d at 133. "'[S]cientific' implies a grounding in the methods and procedures of science . . . and 'knowledge' connotes more than subjective belief or unsupported speculation." <u>Id.</u> (quoting <u>Daubert</u>, 509 U.S. at 590). The trial court must ensure that "[p]roposed testimony [is] supported by appropriate validation—*i.e.*, 'good grounds,' based on what is known." <u>Daubert</u>, 509 U.S. at 590. The <u>Daubert</u> Court identified various factors to aid trial courts when an assessing validity "[to] ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." <u>Id.</u> These factors include whether the expert's "theory or technique" (i) "can be (and has been) tested," (ii) "has been subjected to peer review and publication," (iii) has a high "known or potential rate of error," and (iv) enjoys "'general acceptance' within a "relevant scientific community." <u>Id.</u> at 593–94. These factors, the Court clarified, "do not constitute a definitive checklist or test" applicable in every case. <u>Kumho</u>, 526 U.S. at 150. The trial judge must focus its inquiry on the "experts' 'principles and methodology, not the conclusions that they generate." <u>Id.</u> (citing <u>Daubert</u>, 509 U.S. at 595).

The second part of the analysis concerns relevance. <u>Ambrosini</u>, 101 F.3d at 134. Here, the trial court "must determine whether the proffered expert testimony 'is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'" <u>Id.</u> (quoting <u>Daubert</u>, 509 U.S. at 591). The purpose of this inquiry is to "shield unreliable or irrelevant expert testimony and

evidence from the jury." <u>United States v. DynCorp International LLC</u>, No. 16-1473, 2024 WL 604923, at \*3 (D.D.C. Jan. 25, 2024) (Freidman, J.). When determining if a proposed expert meets the criteria set forth by the governing standard, "[t]he [Supreme] Court has [] made it clear that, under <u>Daubert</u>, trial judges have 'broad latitude to determine' the 'reliability' of expert testimony." <u>Day</u>, 524 F.3d at 1367 (citing and quoting <u>Kumho Tire Co.</u>, 526 U.S. at 153). Thus, if a court finds that the principles underlying a proffered expert's testimony implicate issues of reliability and relevancy, it should exclude the Proffered Experts' testimony. <u>Id.</u>

Expert witnesses have special notice requirements. Rule 16(b)(1)(C)(iii) requires a defendant's expert notice to contain "a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief; the bases and reasons for them; the witness's qualifications, including a list of all publications authorized in the previous 10 years; and a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition." FED R. CRIM. P. 16(b)(1)(C)(iii). This notice must be signed by the purported expert. FED. R. CRIM. P. 16(b)(v). Failure to comply with the notice requirement is, itself, grounds for excluding the proffered expert testimony. <u>See</u> FED. R. CRIM. P. 16(d). Notice requirement is intended to "facilitate trial preparation, allowing the parties a fair opportunity to prepare to cross-examine expert witness and secure opposing expert testimony if needed." FED. R. CRIM. P. 16 adv. comm. note (2022 amend.).

## ARGUMENT

### A. DANIELS Cannot Satisfy His Burden of Proving that Mr. Leisinger's Testimony Satisfies the *Daubert* Requirements for Admissibility

DANIELS first offers the testimony of Mr. Carl Leisinger, a former "Examiner/ Trainer/ Supervisor of the New Jersey State Police." (Docket Entry 201), at 6. Mr. Leisinger is expected to "test-fire and evaluate the purported machine gun." <u>Id.</u> Although the United States has not received

Mr. Leisinger's report stating his conclusions, this witness, the United States anticipates, is expected to offer his opinions regarding the functionality of the recovered machinegun. For the reasons stated below, the United States respectfully requests this Court exclude Mr. Carl Leisinger as an expert.

       **i.**      **Mr. Leisinger's Expert Notice Does Not Comply with Rule 16**

DANIELS should be ordered to supplement Mr. Leisinger's expert notice to comply with Rule 16. The United States appreciates that Mr. Leisinger's report has not yet been created, and the United States will reserve the right to further object to any forthcoming notice should it not comply with the notice requirements under Rule 16. Even without the report however, expert notice provided by DANIELS fails to provide "a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition." FED R. CRIM. P. 16(b)(1)(C)(iii). Instead, Mr. Leisinger's CV notes that he has been "[q]ualified as a Ballistics Expert in most all counties in the State of New Jersey, in Bucks County, Pennsylvania, West Virginia, and Federal Court." Ex. 1 at 3. This is insufficient under the plain language of the rule, and the United States respectfully requests this Court order DANIELS to supplement his expert notice as soon as possible.

       **ii.**     **Mr. Leisinger's Testimony is Not Relevant, and Any Relevance is Outweighed by the Risk of Prejudice or Juror Confusion.**

Even if DANIELS does give appropriate notice of Mr. Leisinger's his testimony should be excluded. As the United States outlined in its June 17, 2024 Omnibus Motions in Limine (Docket Entry 173) and its July 12, 2024 Omnibus Reply in Support of United States' Omnibus Motions in Limine (Docket Entry 205), the proffered defense to the machinegun counts is contrary to the clear language of the statutory definition. The statute states as follows:

The term "machinegun" means any weapon which shoots, is designed to shoot, or can be

> readily <u>restored</u> to <u>shoot</u>, automatically more than one shot, without manual reloading, by a single function of the trigger. <u>The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun</u>, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b) (emphasis added). Simply put, a weapon still fits the statutory definition of a machinegun even if its current nature does not function as intended.[5] <u>See id</u>. The evidence at trial will prove beyond a reasonable doubt that all the machineguns at issues in this case, including the firearms charged to Defendant DANIELS, were fitted with either an auto sear or a Glock switch – which, themselves, meet the definition of a machinegun. Given the crystal clarity of the statutory definition, any testimony regarding the purported dysfunctionality of any specific firearm will serve only to confuse the jury. The Court should exclude Mr. Leisinger from testifying.

**B.**   **<u>The Defendant Cannot Satisfy His Burden of Proving that Mr. Arthur Young's Testimony Satisfies the <i>Daubert</i> Requirements for Admissibility</u>**

Defendant DANIELS' next Proffered Expert is Mr. Arthur Young, a "forensic biologist and managing partner of Guardian Forensic Services." (Docket Entry 201), at 6. As outlined above, Mr. Young has been offered as a "teaching expert" to explain to the jury the controversial scientific concept known as "Touch DNA." DANIELS seeks to qualify Mr. Young as a DNA expert. (Docket Entry 144) at 1.

For the reasons stated below, the United States respectfully moves this Court to exclude Mr. Arthur Young from testifying as an expert.

**i.**   **Mr. Young's Expert Notice Does Not Comply with Rule 16**

Mr. Young's unsigned expert notice is woefully deficient and does not provide sufficient

---

[5] As noted in the <u>United States' Omnibus Reply in Support of United States' Omnibus Motions in Limine</u>, the parties have jointly agreed to a jury instruction on this definition. (Docket Entry 205), at 5-6.

information to give the United States "a fair opportunity to prepare to the cross-examine expert witness . . ." FED. R. CRIM. P. 16 advisory committee's note (2022 amendment).

First, Mr. Young's CV lists seventeen states in which he has provided expert testimony but fails to list the cases in which he has testified as an expert at trial or by deposition for the last four years. Ex. 2 at 5. As such, the United States has had to independently investigate Mr. Young's background and prior testimony. The United States has discovered and attached, two transcripts where Mr. Young was excluded as a forensic DNA expert in the Supreme Court of the State of New York – County of Richmond, dated March 21, 2013 (Exhibit 4) and the Supreme Court of the State of New York – County of Kings, dated September 12, 2016 (Exhibit 5). In both cases, the court stated serious reservations as to Mr. Young's credibility and credentials.

Beginning with Exhibit 4, Mr. Young admitted that, as of March 2013, he had never testified in court with respect to DNA analysis that he himself performed, was fired twice from prior positions from two separate laboratories, and had never written anything for a peer reviewed journal. Ex. 4 at 11, 14-16, 22. Mr. Young's testimony was filled with incoherent and inconsistent accounts of his prior testimonies as an expert. Id. at 36-39, 43-45, 49-50. These inconsistencies led the court to question Mr. Young's credibility, describing, in detail, the "numerous evasive" and "incredulous" answers provided by Mr. Young. Id. at 53-55. Ultimately, the court made the following findings:

> I'm not convinced that he's qualified in [the field of forensic DNA examinations]. He admitted to being fired twice from separate laboratories. One of the times that he was fired he suggested that it was his choice to be fired as opposed to resigning.
>
> His credentials in and of themselves are insufficient to qualify. He majored in premedicine not even biology. He had premedical sciences /biology. When I asked if he was a major in biology he said no, "I put that up in case someone is confused ". The Court suggests that he put it up to confuse someone. In any event when questioned about that he indicated that he was not a major in biology he was a major in premedical sciences. These are all reasons that the Court could not in good

conscience go forward and find him to be an expert in forensic DNA analysis.

. . .

When I asked whether or not he was ever found to be an expert in forensic DNA analysis without being an expert in forensic biology, he said no to me and then he said yes to you and then he said no to me.

I'm not sure what his qualifications truly are. I'm not suggesting that he's attempting to mislead anyone or not being forthright, but there were too many times in his testimony that I found to be somewhat evasive. In any event I can't in good conscience as a matter of law become the first person in the State of New York to find him to be an expert in DNA analysis.

Id. at 54-56.

To make matters worse, Mr. Young continued to advertise himself as an expert to potential customers. As seen in Exhibit 5, Mr. Young's website stated in 2016 (three years after his exclusion in the County of Richmond) that Mr. Young had never failed to qualify as an expert. Ex. 5 at 646. When confronted with this fact, Mr. Young admitted in court that this was false. Id. at 26-27. Thus, a second New York Court excluded Mr. Young for a second time based on credibility issues and his lack of qualifications:

First of all, I'm not that impressed with his CV. He doesn't have a Master's. He testified himself that he's not the lead technical leader in his own lab, not qualified to do that. He's been denied expert status before in our jurisdiction. The bulk of his work seems to be in the past, nothing recent, and I take that into consideration that he's been terminated from his two prior jobs.

But the most troubling thing is that he has not updated in his website that he's been denied expert status. That he holds himself out, if asked he will say that he's not been denied being qualified as an expert, which isn't true.

So, I have no choice, generally it's not, with this Court it's not a high threshold, but I'm going to have to deny your application to have Mr. Young qualified as an expert.

Id. at 28-29.

Moreover, Mr. Young's notice provides an incomplete and inaccurate recitation of the

material he purports to base his opinion on. Mr. Young describes "review[ing] numerous body worn camera videotapes" associated with the search of DANIELS' residence in support of his opinion that a "person's DNA can end up on a[] weapon without having directly deposited DNA on to the weapon." (Docket Entry 201), at 6. However, this notice does not identify which body-worn camera Mr. Young relies on for this opinion, or what scientific research he has relied on for the proposition that Touch DNA could be transferred in this way. Notably, body worn camera footage comes from FBI's ERT members whose responsibility to clear a residence. By policy, these members do not touch evidence, and indeed, there is no body worn camera that will show a law enforcement officer touching Mr. Daniels who then touches the firearms in question. The insufficiency of Mr. Young's notice, as well as the questionable veracity of his so-called observations are independently sufficient to reject this proffered testimony out of hand. In this jurisdiction, expert notices must identify with specificity the bases for each opinion and how the expert relied on each source for a particular opinion. Day, 524 F.3d 1371-72. DANIELS' notice with respect to Mr. Young fails to do so, and is simply insufficient as a matter of law.

### ii.    Mr. Young is not Qualified to Testify as to the Subject Matter Described

Even without Mr. Young's glaring credibility issues, Mr. Young is not qualified to testify in the field of forensic DNA analysis. Mr. Young obtained his Bachelor of Science in Pre-Medical Sciences from the University of Southwestern Louisiana in 1991; however, to date, Mr. Young has obtained no higher degree, including a Master's degree. Ex. 2 at 1. Indeed, apart from having attended lectures and conferences, Mr. Young offers no support for his claimed expertise in the field of DNA analysis. For example, Mr. Young has never authored, or co-authored, a peer-reviewed scientific paper, on any topic. Id. at 5; Ex. 4 at 22. And the last lecture he gave on anything related to his proposed testimony in this case was in 2001. Ex. 2 at 5. It appears,

moreover, that Guardian Forensic Services (the lab where Mr. Young is currently a "Forensic Biology Specialist" and "Managing Partner") engages in practices that are not supported by the scientific community. See Segovia v. Texas, No 10-15-00111-CR, 2016 WL 4573090, at *3-4 (Tex. App. Aug. 31, 2016). In Segovia, a Texas State court excluded Mr. Young as a potential expert after he previewed his testimony about "vacuum swabbing," a technique that Guardian Forensic Services uses. Id. at *3. After Mr. Young could only identify a single publication supporting the technique, and "did not know if the vacuum swabbing technique had ever been admitted in a Texas court as a qualified or reliable technique," the trial court excluded his testimony based upon "issues with the reliability of the science." Id.

If DANIELS wishes to address the defense of DNA transfer, he can find a qualified expert or cross-examine the United States'. But Rule 701 does not permit him to introduce an individual to opine on hypothetical, scientific issues that he is not qualified to discuss. Mr. Young is being offered by DANIELS for one thing only: to confuse the jury on a topic that the United States' qualified expert can explain in full.  This Court should not allow that.

### iii.    Mr. Young's Testimony is Not Relevant, and Any Relevance is Outweighed by the Risk of Prejudice or Juror Confusion

Even if this Court were to qualify Mr. Young as an expert, his testimony is not relevant to the jury. To find testimony to be relevant, the court must determine whether the expert's testimony is "sufficiently tied to the facts of the case and whether it will aid the jury in resolving a factual dispute." Daubert, 509 U.S. at 591–92. DANIELS admits in his expert notice that Mr. Young will not offer any specific testimony with regards to DANIELS and the firearms, in fact, he is being offered as a "teaching expert" on Touch DNA, a concept the scientific community is divided about. In other words, his testimony offers no helpful guidance to a jury seeking to understand the DNA analysis of this case, rather he seeks to teach the jury about an abstract concept within the field of

forensic biology, of which he is not qualified to do.

The extent of Mr. Young's review of the evidence is limited to "review[ing] numerous body worn camera videotapes." (Docket Entry 201), at 6. He has not examined any DNA evidence or the results from FBI testing. If the defense's working theory revolves around Touch DNA, then DANIELS is free to rigorously cross-examine Ms. Jessica Van-Dyke, the United States's DNA expert who is familiar with the concept of Touch DNA and personally handled the evidence in the case. This Court need not waste time and resources by allowing a redundant witness, who has not reviewed any pertinent evidence to the case, to teach about Touch DNA. Since the defense has other means of eliciting testimony on Touch DNA, the United States respectfully request this Court exclude Mr. Young's testimony as it is not relevant and will confuse the jury.

**C.   The Defendant Cannot Satisfy His Burden of Proving that Mr. Alfred Demirjian's Testimony Satisfies the _Daubert_ Requirements for Admissibility**

DANIELS finally offers the testimony of Mr. Alfred Demirjian, the CEO of Techfusions, as the defense's information security and data forensics expert. Mr. Demirjian is expected to "explain to the jury how Instagram works and how Instagram accounts can be created in the false names of individuals who are not the actual account holders." (Docket Entry 201), at 6. For the reasons stated below, the United States respectfully requests this Court exclude Mr. Demirjian from testifying as an expert.

**i.   Mr. Demirjian's Expert Notice Does Not Comply with Rule 16 and Mr. Demirjian is not an "Expert" as Contemplated Within Rule 702**

Like the expert notices for Messrs. Leisinger and Mr. Young, Mr. Demirjian's expert notice is deficient as a matter of law. His unsigned expert notice makes clear that he is being called for the limited opinion that "false [Instagram] accounts can be created" but "will not offer a specific opinion as to whether any of the Instagram accounts alleged to be in the name of Mr. Daniels were or were not falsely attributed to Mr. Daniels." (Docket Entry 201) at 6. This limitation is almost

certainly because he has no factual basis to do so. Regardless, nothing in his CV nor in his threadbare notice does DANIELS describe <u>any</u> <u>reason</u> <u>whatsoever</u> as to the bases and reasons for this opinion. Instead, it is likely that Mr. Demirjian will simply take the stand and provide a lay-opinion – that anyone can access a computer and create an Instagram account with whatever username he or she desires (the same could be said for any digital account, not just Instagram).

DANIELS cannot circumvent the Federal Rules of Evidence by attempting to qualify an expert under Rule 702 to provide testimony that is covered by Rules 602 and 701. Rule 602 of the Federal Rules of Evidence, as a general matter, invites anyone to testify about anything they have personal knowledge about. FED. R. EVID. 602. Rule 701 of the Federal Rules of Evidence limits a lay witness's opinions or inferences to those "(a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. EVID. 701. Together, the rules "ensure that any opinions offered by a lay witness are based on personal, 'first-hand knowledge or observation,' and 'a process of reasoning familiar in every day life' " while still permitting witnesses to offer conclusions " 'that cannot be described factually . . . apart from inferences.' " <u>United States v. Williams</u>, 827 F.3d 1134, 1155-56 (D.C. Cir. 2016) (quoting FED. R. EVID. adv. comm. note (2000 amend.)). Mr. Demirjian, having admitted that he plans to offer lay-testimony without any personal knowledge of the case, should be excluded as witness in this case.

### ii.     Mr. Demirjian is not Qualified to Testify as to the Subject Matter Described

While the United States may concede that Mr. Demirjian is qualified to testify in the field of data forensics and information security, he is being offered by the defense as a social media expert, which he is not. While it is unclear whether Mr. Demirjian's CV is updated, since the cases

he cites in his "Cases in which I Testified as an Expert in the Previous 4 years" section are from 2016–2019. Mr. Demirjian only claims to have testified with respect to cell site location data, not social media. Ex. 3 at 2. In those cases, Mr. Demirjian analyzed data and offered opinion testimony about the reliability of cell site location data. Id. That the United States is aware of, Mr. Demirjian has never testified with respect to Instagram, let alone "how Instagram works and how Instagram accounts can be created in false names . . . ." (Docket Entry 201), at 6. His CV details an impressive thirty-year work experience in data forensics and data recovery but fails to mention any specific work with regards to social media or Instagram. He has not published any scholarship in the social media context and has not attended any seminars or conferences in that space. That Mr. Demirjian runs a successful technology company and is tasked with "carefully sorting through significant amounts of data to uncover digital evidence that others would not notice," does not make him qualified to "teach" the members of the jury about how Instagram functions and how its accounts are created. Ex. 2 at 2. The Court should exclude Mr. Demirjian's testimony since he is unqualified to offer opinion testimony about social media.

iii.    **Mr. Demirjian's Testimony is Not Relevant, and Any Relevance is Outweighed by the Risk of Prejudice or Juror Confusion.**

Even if this Court were to qualify Mr. Demirjian as a social media expert, like Mr. Young, Mr. Alfred Demirjian's testimony should be excluded because it is not relevant to the jury. Mr. Demirjian offers nothing more than a common-sense lesson about how Instagram operates along with the possibility that some people create fake accounts. This appears to be an attempt by DANILES to "backdoor" a third-party perpetrator defense to the jury, without establishing the requisite nexus. (Docket Entry 205) at 7-8.

While there is no evidence to support this assertion that any of the social media accounts were falsely created, in fact strong evidence to the contrary is available, defense need not call an

expert to establish their theory. Indeed, DANIELS can cross-examine any of the United States' witnesses about this theory of the defense. Such cross-examination would provide a more reliable answer, given that those witnesses reviewed the evidence that will be in this case.

Mr. Demirjian's testimony, having no connection to the facts of this case, would be nothing more than a speculative teaching lesson. There is no doubt that allowing Mr. Demirjian to testify would confuse the jury, cause undue delay, and waste time and resources.

**CONCLUSION**

WHEREFORE, the United States respectfully requests the Court to preclude the testimonies of Messrs. Carl Leisinger, Arthur Young, and Alfred Demirjian or, in the alternative, to schedule an immediate Daubert hearing.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. BAR NO. 481052

By:   */s/  James B. Nelson*
JAMES B. NELSON
D.C. Bar No. 1613700
Assistant United States Attorney
Federal Major Crimes Section
601 D. Street, N.W.
Washington, D.C. 20530
(202) 252-6986
james.nelson@usdoj.gov

*/s/  Justin F. Song*
JUSTIN F. SONG
N.Y. Bar No. 5626379
Assistant United States Attorney
Federal Major Crimes Section
601 D. Street, N.W.
Washington, D.C. 20530
(202) 227-9019
justin.song@usdoj.gov